UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
OLGA M.,

                          Plaintiff,          <u>DECISION AND ORDER</u>
                                              1:22-CV-03217-GRJ

            v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In November and December of 2015, Plaintiff Olga M.[1] applied for

Disability Insurance Benefits and Supplemental Security Income Benefits

under the Social Security Act. The Commissioner of Social Security denied

the applications.  Plaintiff, represented by Lewis Bart Insler, Esq.,

commenced this action seeking judicial review of the Commissioner's

denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties

consented to the jurisdiction of a United States Magistrate Judge. (Docket

No. 28).

This case was referred to the undersigned on March 17, 2023.

Presently pending are the parties' Motions for Judgment on the Pleadings

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket Nos. 15, 22). For the following reasons, Plaintiff's motion is due to be granted, the Commissioner's motion is due to be denied, and this case is remanded for further proceedings.

## I. BACKGROUND

### A.  *Administrative Proceedings*

Plaintiff applied for benefits on November 13, 2015, and December 16, 2015, respectively, alleging disability beginning November 4, 2015. (T at 192-95, 196-201).[2]  Plaintiff's applications were denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").

An administrative hearing was held on December 21, 2017, before ALJ Vincent Cascio. (T at 60-95).  On April 6, 2018, ALJ Cascio issued a decision denying the applications for benefits. (T at 32-58).  The Appeals Council denied Plaintiff's request for review on February 21, 2019. (T at 1-5).

Plaintiff commenced an action in the United States District for the Southern District of New York seeking judicial review.  On November 23, 2020, the Honorable Debra Freeman, United States Magistrate Judge,

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 12

issued a decision granting Plaintiff judgment on the pleadings and remanding the matter for further administrative proceedings. (T at 911-937).  The case was assigned to a new ALJ. (T at 949-51).

A hearing was held on January 11, 2022, before ALJ Michael Stacchini. (T at 825-871).  Plaintiff appeared with an attorney and testified. (T at 833-63). The ALJ also received testimony from Courtney Clem, a vocational expert. (T at 864-70).

B.    *ALJ's Decision*

On February 11, 2022, ALJ Stacchini issued a decision denying the applications for benefits. (T at 801-824).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 4, 2015 (the alleged onset date) and met the insured status requirements of the Social Security Act through March 31, 2022 (the date last insured). (T at 806).

The ALJ concluded that Plaintiff's status post cervical fusion with hardware; degenerative disc disease of the lumbar spine; carpal tunnel syndrome; psoriatic arthritis; obesity; asthma; failed back surgery; major depressive disorder; generalized anxiety behavior; and panic disorder without agoraphobia were severe impairments as defined under the Act. (T at 807).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 807).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567 (a), with the following limitations: she can occasionally climb ramps and stairs, with no climbing ladders, ropes, or scaffolds; can perform occasional balancing, stooping, kneeling, crouching, crawling; can engage in frequent rotation, flexion, extension of the neck; can perform frequent reaching, handling and fingering; and must avoid extreme cold, concentrated exposure to atmospheric conditions, unprotected heights, and hazardous machinery. (T at 809).

The ALJ found Plaintiff limited to a moderate sound noise level, as defined by the *Dictionary of Occupational Titles* and *Selected Characteristics of Occupation*, and concluded that she was able to understand, remember, and carry out simple routine tasks with regular breaks at two-hour intervals. (T at 809).

The ALJ determined that Plaintiff could not perform her past relevant work. (T at 815).

However, considering Plaintiff's age (36 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 815-16).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between November 4, 2015 (the alleged onset date) and February 16, 2022 (the date of the ALJ's decision). (T at 816).  ALJ Stacchini's decision is considered the Commissioner's final decision.

C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on April 20, 2020. (Docket No. 1).  On September 16, 2022, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket No. 15, 16).  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on December 7, 2022. (Docket No. 22, 23).  On January 14, 2023, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 29).  The Commissioner filed a reply memorandum of law on February 1, 2023. (Docket No. 32).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and
work experience.

4. If the impairment is not "listed" in the regulations, the
Commissioner then asks whether, despite the claimant's severe
impairment, he or she has residual functional capacity to
perform his or her past work.

5. If the claimant is unable to perform his or her past work, the
Commissioner then determines whether there is other work
which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.

Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises one main argument in support of her request for

reversal of the ALJ's decision.  Plaintiff argues that the ALJ's assessment

of the medical opinion evidence was flawed, which in turn undermined the

RFC determination.

A.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).[3]

A "treating physician" is the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] ... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

An opinion from a treating physician is afforded controlling weight as to the nature and severity of an impairment, provided the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

However, treating physician opinions are not always dispositive.  For example, an opinion will not be afforded controlling weight if it is "not

---

[3] In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence.  The revised regulations apply to claims filed on or after March 27, 2017.  See 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits before that date, the new regulations do not apply here.

consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

To determine how much weight a treating physician's opinion should be given, the ALJ considers the "*Burgess* factors" identified by the Second Circuit: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019)(following *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

The *Burgess* factors are also applied to the opinions of non-treating physicians, "with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant." *McGinley v. Berryhill*, No. 17 Civ. 2182, 2018 WL 4212037, at *12 (S.D.N.Y. July 30, 2018).  A consultative physician's opinion may constitute substantial evidence. *See Petrie v. Astrue*, 412 F. Appx 401, 406 (2d Cir. 2011).

      1.    *Dr. Fekete*

Dr. Robert Fekete, Plaintiff's treating neurologist, completed a functional capacity assessment in August of 2017.  At that time, Dr. Fekete

had been treating Plaintiff approximately every 3 months for 4 years. (T at 640).  He diagnosed cervical spine stenosis and migraines. (T at 640).

Dr. Fekete opined that Plaintiff's symptoms were not severe enough to interfere with attention and concentration and that she was capable of low stress jobs. (T at 642-43).  He believed Plaintiff could sit and stand/walk for a total of 4 hours in an 8-hour workday but would need to take an unscheduled 15-minute break once a day. (T at 643).  He opined that Plaintiff could not perform any lifting, carrying, or reaching; had significant limitations in moving her neck; and had limited ability to perform fine motor tasks with her hands and fingers. (T at 644).

2.    *Dr. Posecion*

Dr. Lyle Posecion, a treating pain management physician, completed a functional capacity assessment in August of 2017.  At the time, he had been treating Plaintiff every 1-3 months for approximately eight months. (T at 602).  Dr. Posecion opined that Plaintiff's symptoms were severe enough to interfere with attention and concentration frequently. (T at 604).  He believed she could sit and stand/walk for 4-5 hours in an 8-hour workday but would need to take 4-6 unscheduled 5–10-minute breaks during the course of the day. (T at 605).

Dr. Posecion stated that Plaintiff could occasionally lift/carry up to 10 pounds, had significant limitations in moving her neck, and had significant impairment with respect to fine motor activities, as well as reaching. (T at 606).  He believed Plaintiff would be absent from work more than 3 times per month due to her impairments or treatment. (T at 607).

### 3.    Dr. Kaci

Dr. Julia Kaci performed a consultative examination in December of 2015.  She diagnosed neck pain with history of cervical spine disc dislocation, causing cervical spine canal stenosis and radiculopathy; migraine headaches; and asthma. (T at 562).  Dr. Kaci opined that Plaintiff had mild limitation with respect to sitting, standing, and walking and moderate limitation in using stairs, kneeling, squatting, and engaging in activities requiring prolonged use of her hands. (T at 562).

Dr. Kaci assessed marked limitation in Plaintiff's ability to lift, carry, push, and pull, along with moderate impairment as to activities requiring neck turning and the need to avoid respiratory irritants. (T at 562).

### 4.    ALJ"s Analysis

The ALJ gave "little weight" to the opinions of Dr. Fekete and Dr. Posecion and "partial weight" to the assessment of Dr. Kaci. (T at 813-14).

For the following reasons, the Court concludes that the ALJ's analysis was inadequate.

Notably, the ALJ concluded that Plaintiff retained the RFC to perform frequent rotation, flexion, and extension of her neck. (T at 809). The ALJ's RFC analysis is at odds with the assessments of both treating physicians, who each assessed significant limitation in Plaintiff's ability to move her neck. Additionally, Dr. Kaci, the consultative examiner, found moderate impairment. (T at 562, 606, 644).

The ALJ discounted the treating physicians' opinions generally as inconsistent with physical examinations and Plaintiff's activities of daily living. (T at 814). The ALJ also gave "partial" weight to Dr. Kaci's opinion but failed to explain how much weight he gave Dr. Kaci's assessment regarding reaching. (T at 813).

Thus, the ALJ apparently adopted Dr. Kaci's moderate limitation in Plaintiff's ability to perform activities involving neck turns (T at 562) and then concluded that this limitation was not inconsistent with the ability to perform frequent neck movements.

The problem with the ALJ's analysis is that there is no discussion in his written explaining whether and why he opted to give greater weight to Dr. Kaci's reaching restriction, as opposed to the shared judgment of the

treating physicians.  *See Ferraris v. Heckle*r, 728 F.2d 582, 587 (2d Cir. 1984) (noting that "the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence"); *see also Diaz v. Comm'r of Soc. Sec.*, No. 18-CV-8643 (SN), 2020 WL 1699996, at *11 (S.D.N.Y. Apr. 8, 2020)("The ALJ's consideration of these factors must be evident from the ALJ's decision, as the claimant is entitled to an explanation as to why the ALJ did not credit the findings of a treating physician.").

While there is case law where a moderate limitation in neck movement was incorporated in an RFC that permits frequent head turning, those cases involved situations where there was a "noted lack of evidence to support a need for greater restriction." *Robert G. B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-0291 (DEP), 2022 WL 4482737, at *6, n.4 (N.D.N.Y. Sept. 27, 2022); *see also Sanders v. Comm'r of Soc. Sec.,* No. 20-CV-2229 (ALC), 2021 WL 4176238, at *15 (S.D.N.Y. Sept. 14, 2021).

Here, by contrast, both treating physicians assessed significant limitation in Plaintiff's ability to turn her neck (T at 606, 644); the record contained consistent documentation of neck pain and limitation persisting despite extensive treatment (T at 82, 584, 588, 628, 695, 708-10, 1324-25, 1412-13, 1912-21); and the ALJ offered no explanation as to how he

reconciled this evidence with his conclusion that Plaintiff could perform frequent rotation, flexion, and extension of the neck.

The ALJ committed a similar error regarding Plaintiff's ability to reach. The ALJ found that Plaintiff could perform frequent reaching. (T at 809). Dr. Poseccion opined that Plaintiff had significant limitation with respect to repetitive reaching. (T at 606).  Dr. Ferete offered the same opinion. (T at 644).  Dr. Kaci did not offer a specific assessment of Plaintiff's ability to reach, but assessed marked limitation in lifting, carrying, pushing, and pulling. (T at 562).

The ALJ's conclusion that Plaintiff could perform frequent reaching notwithstanding the assessments of two treating providers—each of whom found significant reaching limitations—in conjunction with the opinion of the consultative examiner, which was at least partially supportive of a reaching restriction, was error.

To the extent the Commissioner points to the general reasons offered by the ALJ for giving little weight to the treating opinions, those reasons are insufficient.

The ALJ relied heavily on a perceived inconsistency between Plaintiff's activities of daily living and the treating physicians' assessments. (T at 814).  The ALJ, however, failed to explain how Plaintiff's activities

demonstrated the ability to perform frequent reaching (or neck turning) over the course of an 8-hour workday. *See, e.g., Cabrera v. Comm'r of Soc. Sec.*, No. 16CIV4311ATJLC, 2017 WL 3686760, at *4 (S.D.N.Y. Aug. 25, 2017)("The ALJ had an obligation to better explain his decision to discount Dr. Tsinis' opinion based on Cabrera's alleged ability to perform daily activities, and to at least acknowledge the rigor of Cabrera's daily activities and the limitations she placed on those tasks."); *Molina v. Colvin*, 13-CV-4989, 2014 U.S. Dist. LEXIS 95998, 2014 WL 3445335, at *15 (S.D.N.Y. July 15, 2014) ("There is a big difference[] between an occasional walk or shopping trip and sitting/standing for an eight hour workday"); *Woodford v. Apfel*, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000) (explaining that a claimant's performance of basic self-care activities does not contradict assertions of disability).

Further, although the ALJ discounted the treating physicians' assessments by referencing physical examinations showing symptom improvement, mild antalgic gait, and full strength (T at 814), he did not adequately account for the significant evidence of pain and limitation persisting despite extensive treatment, including spinal fusion, disc replacement, epidural steroid injections, trigger point injections, and prescription pain medication. (T at 590-91, 616-19 620, 628-29, 632, 1324-

25, 1328-34, 1412-13, 1373-1409). This was also error. *See Nunez v. Kijakazi*, No. 1:20-CV-05907, 2022 WL 2872666, at *2 (E.D.N.Y. July 21, 2022)("The ALJ can neither substitute her own opinion for the experts, nor cherry-pick the facts to support her conclusion.")(citing *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)).

In sum, the Court concludes that the ALJ's assessment of the evidence concerning Plaintiff's ability to rotate her neck and perform reaching during a workday cannot be sustained.

Plaintiff also argues that the ALJ did not adequately account for evidence of impairment in her ability to maintain concentration, persistence, and pace. There was no error as to this aspect of the ALJ's decision.

Dr. Posecion opined that Plaintiff's symptoms would frequently interfere with her attention and concentration. (T at 604).

Dr. Fekete, however, stated that Plaintiff's symptoms were not severe enough to interfere with attention and concentration and that she was capable of low stress jobs. (T at 642-43).

Dr. Melissa Antiaris, a consultative psychiatric examiner, assessed no limitation in Plaintiff's ability to maintain attention and concentration. (T at 568).

Treatment notes indicated that Plaintiff had normal attention and memory. (T at 441, 446, 674, 678, 680, 683, 686, 692, 695, 689, 698, 701, 709, 1245, 1251, 1254, 1257, 1260, 1267, 1289, 1293, 1298).

The ALJ accounted for any problems by limiting Plaintiff to work involving simple, routine tasks.  (T at 809).

Given the evidence referenced above, this was sufficient to account for Plaintiff's impairments related to attention and concentration. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)("None of the clinicians who examined [claimant] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations. Although there was some conflicting medical evidence, the ALJ's determination that Petitioner could perform her previous unskilled work was well supported."); *see also Morales v. Berryhill*, 484 F. Supp. 3d 130, 150 (S.D.N.Y. 2020)(collecting cases);*Martinez v. Comm'r of Soc. Sec.*, 2016 U.S. Dist. LEXIS 140088, at *48 (S.D.N.Y. Oct. 5, 2016)("[S]uch limitations in concentration, dealing with stress, and socialization have been found to be consistent with an RFC for unskilled work.").

Lastly, Plaintiff argues that the ALJ did not adequately account for the evidence of pain and limitation arising from her migraine headaches.  The ALJ did not list Plaintiff's migraines as a medically determinable or severe

impairment. (T at 807).  The Commissioner implicitly concedes that this was error but argues that it was harmless because the ALJ extensively discussed Plaintiff's migraines in the decision, which were well-managed with Botox injections. (T at 810-15).

The Court finds no reversible error as to this aspect of the ALJ's decision.  Treatment records, including brain imaging,evidenced that Plaintiff's migraines, while periodically problematic, were generally well-controlled with Botox injections and did not consistently prevent Plaintiff from engaging in activities of daily living. (T at 465, 710, 1251, 1267-68, 1280, 1288-90, 1293-94).

In addition, the ALJ limited Plaintiff to work that did not include exposure to extreme cold or noise about a moderate level, which Plaintiff identified as triggers for migraines. (T at 809, 815, 863-84).  *See Danielle Y. v. Saul,* No. 8:19-CV-599 (MAD), 2020 WL 1862968, at *6 (N.D.N.Y. Apr. 14, 2020)(finding that the ALJ adequately "accounted for Plaintiff's migraine headaches 'by limiting her to no more than moderate levels of noise'"). Accordingly, the ALJ properly assessed and accounted for Plaintiff's migraines.

## B.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the foregoing reasons, this Court finds a remand required for a proper assessment of the evidence, including (in particular) the treating physicians' opinions regarding Plaintiff's ability to perform neck movement and reaching.

The Court is mindful that Plaintiff's initial applications for benefits have been pending for more than seven (7) years and this matter has already been remanded once.  As such, this Court exercises its discretion and directs that proceedings before the ALJ be completed within 120 days of the date hereof.  If the decision is a denial of benefits, then a final decision shall be rendered within 60 days of any appeal by Plaintiff.  *See*

*Martinez v. Saul*, No. 19-CV-6515 (BCM), 2021 WL 2588783, at *11 (S.D.N.Y. June 23, 2021).

## IV.  CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 22) is DENIED; and this case is REMANDED for further administrative proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment in favor of Plaintiff and then close the file.

Dated: July 17, 2023                      *s / Gary R. Jones*
                                          GARY R. JONES
                                          United States Magistrate Judge